ARTHUR H. THOMPSON et al.

v.

MARY E. BECKER et al.

*Opinion filed December 18, 1901—Rehearing denied February 5, 1902.*

1. DEEDS—*quit-claim deed does not pass an after-acquired interest.* A quit-claim deed passes any estate which the grantor has at the time of its execution, but it cannot affect, by way of release, a future contingent interest limited to the surviving members of a class upon the event of the death of one of them without living issue, where there are no terms used in the deed which can be construed as referring to future interests.

2. SAME—*what necessary to create assignment of future interests.* To create an assignment of future interests there must be on the face of the instrument, or collected from its provisions by necessary implication, language of a present transfer directly applying to future as well as existing interests, or else language importing a present contract to sell or assign future interests.

3. PLATS—*effect of making of a plat on partition of property between tenants in common.* A plat made in accordance with quit-claim deeds executed by tenants in common to make partition of the land under the terms of their ancestor's will, upon which plat are marked the names of the parties on the respective tracts quit-claimed to them, does not amount to a general warranty deed between such parties which will convey a contingent interest, which afterwards ripens into a fee title upon the happening of a specified contingency. (*Lavalle* v. *Strobel,* 89 Ill. 370, distinguished.)

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

ALDRICH, ANDREWS, MATHIAS & PHIPPS, for appellants.

TAYLOR & MARTIN, and A. M. SAVAGE, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellees Mary E. Becker and Christian Becker, her husband, against the other appellees and the appellants, in the superior court of Cook county, for the partition of certain lands located in said county, between the appellees, of which David

Andrews, the father of said Mary E. Becker, died seized, and to quiet the title thereto in the appellees as against the appellants. The appellants filed a cross-bill, and answers having been filed to the original and cross-bills and replications thereto, a trial was had, which resulted in the dismissal of the cross-bill and the entering of a decree in conformity to the prayer of the original bill, to reverse which decree an appeal has been perfected to this court.

David Andrews died on the 29th day of May, 1885, leaving a last will and testament, which was duly admitted to probate, wherein, after devising one-sixth of his estate to his son, Edwin R. Andrews, in trust for the benefit of the children of his deceased son, William, he provided:

"*Second*—I give, devise and bequeath the remaining five-sixths of my estate, both real and personal, to my five children, Mary, Edwin, Charles, Milo and Warren, in equal parts.

"*Third*—If any of my sons, Edwin, Charles, Milo or Warren, shall hereafter die leaving no children, I direct that the share or shares of such deceased son or sons shall go to the survivors of my said five children, Edwin, Charles, Milo, Warren and Mary, in equal parts: *Provided*, that in case any of my said sons shall die leaving a widow and no children, such widow shall have a life estate in an undivided one-half of her husband's share."

Edwin R. Andrews died testate January 11, 1892, leaving a widow and no children, and by his will devised his share of said real estate to his wife, Loretta T. Andrews. Said Loretta T. Andrews died testate on the 4th day of June, 1898, and by her will devised to her brothers and sisters (the appellants) the real estate so devised to her by her husband. Warren Andrews died intestate on February 9, 1891, and left him surviving two children, Elmer Vincent Andrews and Nellie Andrews, (now known as Nellie Andrews Scott,) his wife having died prior to his death.

It is admitted by counsel for appellants that Edwin R. Andrews took, under the will of David Andrews, deceased, a base or determinable fee in the property devised to him, which estate would be terminated on his death leaving no children. It is claimed, however, that the right of the heirs of David Andrews, deceased, to take said lands, by virtue of said will, in case Edwin R. Andrews should die leaving no children, was, subsequently to the death of David Andrews, conveyed and released to Edwin R. Andrews by means of a certain quit-claim deed made to Edwin R. Andrews by said heirs, and an agreement in writing made contemporaneously therewith between said heirs and Edwin R. Andrews, and by reason of the fact that subsequent to the making of such deed said lands were platted by said heirs under the provisions of chapter 109, (Hurd's Stat. 1899, p. 1280,) entitled "An act to revise the law in relation to plats," approved March 21, 1874, in force July 1, 1874.

On the first day of October, 1885, the devisees under the will of David Andrews, deceased, partitioned said land into six equal parts, and on the same day executed, each to the other, quit-claim deeds. One of said deeds conveyed to Edwin R. Andrews, as his one-sixth interest in the real estate of David Andrews, deceased, the premises in question. Said deeds were all in statutory form, and there was inserted in each the following clause: "This deed is made for the purpose of making a partition of all the lands acquired by the devisees under the last will of David Andrews, deceased, and held by them as tenants in common," and the same were each made subject to a proportional part of certain indebtedness of the testator, David Andrews, deceased, which was secured to be paid by certain trust deeds and mortgages upon said premises, which had been given by the testator in his lifetime and which the grantees in said deeds, respectively, assumed and agreed to pay. The agreement entered into between said heirs and Edwin R. Andrews at

the time of the execution of said deed contains no covenants of warranty, and makes no reference to the future interest of the grantors in the land conveyed to Edwin R. Andrews in the event of his death leaving no children, and was not made for the purpose of transferring, and did not purport to convey, the title to said premises.

Edwin R. Andrews took an absolute interest in said lands, determinable in the event of his death leaving no children, and having died leaving no children the same passed to the surviving children and grandchildren of the testator, viz., Mary E. Becker, Milo J. Andrews, Charles M. Andrews, Elmer Vincent Andrews and Nellie Andrews Scott, unless the right to take such interest had been released or conveyed by said heirs to said Edwin R. Andrews during his lifetime, by deed or otherwise. The interest of said heirs in the share of Edwin R. Andrews had not accrued at the time of the execution of said quit-claim deed and contract, and was then a future contingent interest which might never ripen into possession, the same being limited to take effect upon the death of Edwin R. Andrews leaving no children. By an executory devise no estate vests upon the death of the testator, but only on the happening of some future contingency. (*Glover* v. *Condell*, 163 Ill. 566.) Said quit-claim deed does not purport to release or convey a future interest of any kind in said lands. The deed is in the ordinary form, and only quit-claims all interest of the grantors therein, contains no covenants of warranty, and the law is well settled that such an instrument does not pass a subsequently acquired interest. In *Glover* v. *Condell, supra*, on page 593 we say: "It is well settled that such an instrument [a quit-claim deed] does not pass a subsequently acquired interest. (*Holbrook* v. *Debo*, 99 Ill. 372.) 'A conveyance of all the right, title and interest in lands is certainly sufficient to pass the land itself if the party conveying has an estate therein at the time of the conveyance, but it passes no estate which is not then pos-

sessed by the party.' (*Blanchard* v. *Brooks*, 12 Pick. 47.)
A quit-claim is sufficient to pass any estate which the
person executing it has at the time of such execution,
but it cannot affect, by way of release, a future contin-
gent interest limited to the surviving members of a class
upon the event of the death of one of them without liv-
ing issue at the time of his death, there being no terms
used in such quit-claim or release which can be construed
as referring to future interests. (*Striker* v. *Mott*, 28 N. Y.
82.) In order to create an assignment of future interests
and contingencies 'there must be on the face of the in-
strument, expressly, or collected from its provisions by
necessary implication, language of present transfer di-
rectly applying to the future as well as to the existing
property, or else language importing a present contract
or agreement between the parties to sell or assign the
future property.'—3 Pomeroy's Eq. Jur. sec. 1290." In
this case said quit-claim deed and agreement do not pur-
port to release or convey any future interest in the said
lands, and can therefore not be held to release the inter-
est in said lands which said heirs took, under said will,
in the share of said Edwin R. Andrews at the time of his
death, he having died leaving no children.

On the 8th day of March, 1887, the heirs of David An-
drews, deceased, subdivided and platted the real estate
which had been devised to them by said will according
to the partition before that time made between them,
as evidenced by said quit-claim deeds, and designated
on said plat the respective owners of said subdivision by
name, which plat was duly acknowledged and recorded,
the portion of such subdivision deeded to Edwin R. An-
drews being blocks 2 and 17. It is contended by appel-
lants that as the name of Edwin R. Andrews appeared
upon said plat on blocks 2 and 17, under section 3 of
chapter 109 of the Revised Statutes such plat operated
as a conveyance in fee simple to Edwin R. Andrews of
said blocks 2 and 17, and a general warranty against all

the persons who signed, approved and acknowledged said plat. We do not agree with such contention. It is doubtless true that where land is subdivided and platted under said statute and the same is accepted by the public, or portions of the subdivision are sold and conveyed to third parties, the plat is a statutory dedication of the public streets and alleys and such other portions of the subdivision as the plat indicates are intended for public uses, such as "court house," "jail," "college square," "park," etc., and in some instances private persons may obtain interests in portions of the subdivision, such as "private alley," "private park," etc. When, however, as in this case, contiguous owners of real estate jointly plat their lands, such plat does not amount to a general warranty deed between such owners which will convey or release a contingent interest in the land of an adjoining owner, which afterwards ripens into a fee simple title.

The case of *Lavalle* v. *Strobel*, 89 Ill. 370, is not in conflict with this view. In that case no question of the conveyance or release of such contingent interest as the surviving children and grandchildren of David Andrews, deceased, had in the share of Edwin R. Andrews in said estate in case he should die leaving no children, was involved.

We are of the opinion that upon the death of Edwin R. Andrews leaving no children, blocks 2 and 17 of said subdivision passed to the children and grandchildren of David Andrews, deceased, and that the right to take such interest had never been conveyed or released by them.

The decree of the superior court will therefore be affirmed.                                    *Decree affirmed.*