JOHN H. FIFER

*v.*

MELISSA E. ALLEN *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*when death of first taker is contemplated as taking place before death of testator.* Where there is a devise *simpliciter* to one person and in case of his death to another, there being no contingent or doubtful circumstances connected with such death, it will be considered by the courts that the testator intended the death of the first taker to precede his own, and if the first taker survives the testator the devise over is defeated.

2. SAME—*effect where death of first taker is to take place under contingent circumstances.* Where there is a devise *simpliciter* to one person, coupled with a devise over to another in case of the death of the first taker under circumstances which may or may not take place, such as without child or children him surviving, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker, under the circumstances specified, either before or after the death of the testator.

3. SAME—*when first devisee takes a base or determinable fee.* A devise to one person but in case of his death without an heir of his body living and in being at the time of his death then to another person absolutely, creates, in the event of the first taker surviving the testator, a base or determinable fee, subject to an executory devise to the second taker in case of the death of the first taker without an heir of his body living and in being at the time of his death.

4. WASTE—*when equitable waste will not be enjoined.* A court of chancery will interfere to enjoin equitable waste by the owner of a base or determinable fee only when the contingency which is to determine the estate is reasonably certain to happen and the waste is of such a character as to charge the owner with a wanton and unconscientious abuse of his rights.

5. REMAINDERS—*second taker, in case of base fee, has mere expectancy.* In the case of a base or determinable fee the person who is to take in the event of the happening of the contingency which is to determine the first taker's estate has only an expectancy, which he cannot call upon the courts to protect; nor can he recover for taxes voluntarily paid by him upon the land, nor is he entitled to condemnation money if part is condemned for railroad right of way.

APPEAL from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding.

JESSE E. HOFFMAN, for appellant:

When the death of the first taker is coupled with circumstances which may or may not take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and general meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. *Summers v. Smith,* 127 Ill. 645; *Smith* v. *Kimbell,* 153 id. 368.

A devise of real estate to a testator's son but in case the son should die leaving no heirs then the property devised to descend to named persons, passes a base or determinable fee to the son, which will determine upon the death of the son at any time without leaving children, where there is no other provision of the will showing a contrary intention. *Bradsby* v. *Wallace,* 202 Ill. 239.

If it is the rule that where there is a bequest to one person absolutely and in case of his death without issue to another, the contingency referred to is a death in the lifetime of the testator. The rule does not apply when a point of time other than the death of the testator is mentioned or indicated to which the contingency can be referred. *King* v. *King,* 215 Ill. 100; 2 Jarman on Wills, 756.

The court should put itself as fully as possible in the situation of the testator whose language is to be interpreted. 1 Jarman on Wills, 422.

Louis FitzHenry, for appellees:

Where real estate is devised in terms denoting an intention that the primary devisee should take a fee on the death of the testator, coupled with a devise over in case of his dying without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. *Kohtz* v. *Eldred,* 208 Ill. 60; *King* v. *King,* 215 id. 100; *Arnold* v. *Alden,* 173 id. 229.

Where the exceptions are disallowed and counsel elects to abide by his exceptions and files no replication then the answer will be taken as true. *Mix* v. *People,* 116 Ill. 265; *Prettyman* v. *Barnard,* 37 id. 105.

Mr. Justice Cartwright delivered the opinion of the court:

John H. Fifer, the appellant, filed his bill in equity in the circuit court of McLean county against Melissa E. Allen, John H. Allen and the county treasurer of McLean county, the appellees, alleging that appellant's father, John Fifer, died in April, 1884, seized of 95½ acres of land in said county, and leaving a last will and testament executed the previous February, by which, after providing for the payment of his just debts and funeral expenses, the residue of his property, both real and personal, was devised and

bequeathed as follows: "To my two grandchildren, Melissa E. Allen and John H. Allen, share and share alike; but should either of my grandchildren die without an heir of his or her body living or in being at the time of the death of such grandchild, then it is my will that the share of such deceased grandchild shall go to my son, John H. Fifer, absolutely; and in case both of my said grandchildren should die without heirs of their bodies living or in being at the time of their death, then it is my will that both shares, or, what is the same thing, the whole of my estate, shall go to my son, John H. Fifer, absolutely." The further allegations of the bill were, that John H. Allen had not been heard from for many years and was dead; that the complainant was owner, under the will, of an undivided one-half of the premises; that Melissa E. Allen was about forty years old, childless, not in good health and not likely to have a child in the future, so that complainant was the probable owner of the other undivided one-half; that at the time the will was made the testator was seventy-nine years old; that John H. Allen and Melissa E. Allen were son and daughter of a deceased daughter of the testator, the boy being twenty and the girl eighteen years old and neither of them married at the time the will was made; that Melissa E. Allen had occupied the premises since the death of the testator and was cutting off timber and had neglected to pay the taxes; that complainant had redeemed from a sale for taxes on one tract and had paid the taxes on another after publication and before judgment, and that under a judgment of condemnation rendered by the county court of McLean county for the right of way of an electric railroad, $310 had been paid to the county treasurer for the use of those entitled to it. Complainant claimed one-half of the condemnation money and prayed for a decree finding that John H. Allen was dead; that complainant was the owner of an undivided one-half of the premises; that Melissa E. Allen should be decreed to pay the complainant the

amount paid to redeem from the tax sale and to prevent a sale, and should be restrained from waste and from drawing any money from the county treasurer except upon giving a bond to secure the same to the complainant if she should die without issue. John H. Allen was not dead, but appeared and with Melissa E. Allen answered the bill and filed a cross-bill. By their answer and cross-bill they denied that complainant had any interest, under the will, in the premises, and alleged that the provision set forth in the complainant's bill was merely for substitution in the event that one or both of them should die without leaving issue of his or her body prior to the death of the testator, and that both having survived the testator, they took the whole estate in fee simple. They admitted the payment of $310 to the county treasurer as compensation for the right of way and claimed the money. The cross-bill asked for a construction of the will as contended for in the answer and cross-bill, and prayed for an order directing the county treasurer to pay to the complainants in said cross-bill the said sum of money. The cross-bill was answered and the cause was heard upon the pleadings. The court construed the will as contended for by John H. Allen and Melissa E. Allen, defendants in the original bill and complainants in the cross-bill, and held that, inasmuch as they survived the testator, the complainant, John H. Fifer, had not and never could have any right, title or interest in the land. The original bill was dismissed and the county treasurer was ordered to pay the sum of $310 to the complainants in the cross-bill. From that decree an appeal was taken to this court, and the question to be determined is, whether the testator, in employing the words of the will relating to the death of either or both of his grandchildren without a child or children living or in being at the time of the death of either or both of them, referred to the death of said grandchildren, or either of them, before his death, or referred to such death at any time before or subsequent to his death.

The purpose of courts in construing a will is to ascertain the intention of the testator, so that such intention may be given effect if not prohibited by law. The object to be attained is to give the will the interpretation and meaning which the testator intended, and his intention will be carried out whenever it can be done without violating some established rule of law or public policy. (*Crerar* v. *Williams*, 145 Ill. 625; *Bradsby* v. *Wallace*, 202 id. 239; *Perry* v. *Bowman*, 151 id. 25.) To ascertain the intention of the testator the entire will is to be considered and the different parts compared in view of the circumstances existing when it was made, and the question is, what did the testator intend? (*Young* v. *Harkleroad*, 166 Ill. 318; *Johnson* v. *Askey*, 190 id. 58.) Considering the language used by the testator in this case in its natural and primary sense, it must be held to refer to the death of either or both of the grandchildren without issue at any time, either before or after the death of the testator. Unless something is said in the context which requires such a construction, it would not naturally be understood that the testator intended that the death of either or both of the grandchildren without issue must happen within some particular period or before some other event.

In the case of *Thomas* v. *Miller*, 161 Ill. 60, there was a devise to the testator's son with this provision: "And in case of his death without living heirs of his own the whole shall then revert to my heirs, but should he have heirs of his own body at his decease, they shall share equally with the rest of my heirs." It was argued that the provision showed the intention of the testator to be that the gift over was in substitution of the primary gift in the event of his son's death in the lifetime of the testator, but the court could not concur in that construction. The court said (p. 70): "Indeed, no such construction can be given to clause 6 of the will without adding thereto the words 'during the life of the testator,' or other language of similar

import, and we are aware of no authority which would authorize the courts, in construing the will, to add anything to any of its provisions." It was held that the words, when given their natural meaning, could only be construed as referring to death at any time. The court quoted at length from the decision of Lord Cairns in the case of *O'Mahoney* v. *Burdett*, 12 Moak, 22, part of which is as follows: "A bequest to A, and if he shall die unmarried or without children, to B, is, according to the ordinary and literal meaning of the words, an absolute gift to A, defeasible by an executory gift over in the event of A dying at any time under the circumstances indicated, namely, unmarried or without children."

Mr. Kales, in his work on Future Interests, (sec. 199,) says: "In the case of a gift if the first taker die without issue, 'without issue' may mean 'if the first taker die in the lifetime of the testator without issue, then the second taker shall stand in his place to prevent a lapse.' This, however, must be an unusual construction and should require direct support from the context of the instrument. The primary and most usual meaning of the phrase 'die without issue,' is, 'if the first taker die without issue either before or after the testator's death.'"

The rule established in the case of *O'Mahoney* v. *Burdett* has since been followed in England, and it has been considered that there is a manifest distinction between a devise over, not in case of the death of the first devisee, which is inevitable, but upon the happening of a contingent event, such as the death of the first devisee without issue. In case of a devise *simpliciter* to one person and if he should die, to another, the courts of England and this country have construed the will upon the theory that the testator must have had some contingency in view, and inasmuch as the death of the first devisee is a certain and not a contingent event, the testator must have contemplated death within some particular period of time, and to prevent a lapse and

in favor of vested rather than contingent interests, they have considered the life of the testator to be that period. In the case of *Crane* v. *Cowell,* 2 Curtis, 178, the court, referring to the rule of construction just stated, said: "But it is manifest that the whole basis of this reasoning fails if the will gives the property over, not simply if the legatee die, but if his death is connected with some collateral event, such as dying without issue, which is contingent. In such a case there is no necessity to seek for a contingency or for engrafting on the language of the testator a limit of time during which the event is to happen to render it contingent, for the testator has himself, in terms, announced an event which may or may not happen after his decease, as a contingency upon which the property is to go over."

In *Buchanan* v. *Buchanan,* 99 N. C. 308, the court considered a will which made a gift to the testator's son Richmond, but if Richmond should die without a bodily heir, another son, Andrew, was to have the property. The court said: "The testator in the will before us limits the property to one son upon the death of the other without issue, and with no other qualifying restriction. How, then, by construction, can such a restriction as requires the death to occur before the death of the testator be introduced into the clause and it be made to speak what testator has not said?"

In the case of *Britten* v. *Thornton,* 112 U. S. 526, the will under consideration gave certain property to Eliza Ann Thornton, with a provision that if she should die in her minority and without lawful issue then living the land should revert to the estate. The court, citing *O'Mahoney* v. *Burdett* and Jarman on Wills, (chap. 49,) said: "When, indeed, a devise is made to one person in fee and in case of his death to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain or contingent has led the courts to interpret the devise over as referring only to death in the testator's lifetime. But when the death of the first taker is coupled with other

circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator."

The question came before this court in *Summers* v. *Smith*, 127 Ill. 645, under a will containing this provision: "It is further my will, in case any of my sons to whom I have bequeathed property in this my last will and testament should die without heirs of his body, the real estate I have bequeathed to him shall go to his surviving brothers or brother and the personalty to all the other heirs, equally." The dispute was whether those words should be construed as meaning death within the lifetime of the testator or death at any time without heirs of the body. The court said there might be cases found seeming to sanction the first alternative, but that the accepted English rule is, when the death of the first taker is coupled with other circumstances which may or may not take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. The court adopted that rule, and cited in support of it cases including *O'Mahoney* v. *Burdett, Britten* v. *Thornton* and *Crane* v. *Cowell.* The court held that the devise to the son was plainly a fee determinable upon his death without heirs of his body.

In the case of *Smith* v. *Kimbell*, 153 Ill. 368, the testatrix devised real estate to her daughter, Sarah Jane Spears, and added: "Should the said Sarah Jane Spears die leaving no heirs, I will and direct that all of the above described property shall be equally divided between my sisters." The court said that it was most strenuously contended by counsel for appellant that the words "die leaving no heirs" re-

ferred to the death of the devisee in the lifetime of the testatrix, but it was held that the cases cited which seemed to sustain that rule were not applicable, and that when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect upon death, under the circumstances indicated, at any time,—citing *Britten* v. *Thornton* and *Buchanan* v. *Buchanan.*

In *Strain* v. *Sweeny*, 163 Ill. 603, there was a devise to the testator's son, Dennis S. Sweeny, of the testator's homestead, but in case Dennis should die without issue of his body the property was to go to the heirs of Nelson C. Sweeny. Dennis survived his father, and the court held the intention to be that the homestead should go to him, but if he should die without leaving any children when he died, the homestead should go to the heirs of Nelson. It was said that it could not be known until the death of Dennis that the contingency would happen by which the limitation over was to take effect.

In the case of *Lombard* v. *Witbeck*, 173 Ill. 396, there was a devise to the testator's three grandchildren in trust for their use and benefit, with a provision in case any one or more of them should die without leaving issue or descendants of issue, the share of one so dying should go to the survivor or survivors, and in case of the death of all three without either of them leaving issue or descendants of issue, all of the estate should descend to a son of the testator. It was held that the will devised a base or determinable fee, which would end upon death without issue or descendants. That conclusion could not have been reached without holding that the words of the will referred to death at any time.

In *Gannon* v. *Peterson*, 193 Ill. 372, there was a devise to the testator's three sons, with a provision that upon the death of either of them the surviving brother or brothers

should take his share, and in case all three should die without issue, the property should go to other named persons. Two of the sons died without issue after the death of the testator, and it was held that they had a base or determinable fee, and that when they died the gift over took effect and the title to the property vested in the survivor.

In *Thompson* v. *Becker,* 194 Ill. 119, there was a devise to a daughter and four sons, with a provision that if any of the sons should die leaving no children, the share or shares of such deceased son or sons should go to the survivors of the five children. One of the sons died after the death of the testator, and it was held that his interest passed to the survivors. The court necessarily held that the survivorship referred to a date subsequent to testator's death.

In *Bradsby* v. *Wallace,* 202 Ill. 239, property was given by will to the testator's son, James A. Bradsby, with a provision that if he should die leaving no heirs, which meant children, the devised property was to descend to others. The rule was there again stated in practically the same language as in the other cases, and the cases of *Fishback* v. *Joesting,* 183 Ill. 463, and *Arnold* v. *Alden,* 173 id. 229, were held not to conflict in any way with that rule.

Counsel, in contending for a contrary view, relies upon the statement in the American and English Encyclopedia of Law, (vol. 17, 2d ed. 573,) as follows: "Where real estate is devised in terms denoting an intention that the primary devisee should take a fee on the death of the testator, coupled with a devise over in case of his dying without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple." That rule requires that the testator should use terms denoting an intention that the primary devisee shall take a fee simple absolute at the death of the testator, and, of course, if that is the intention it must be given effect, since all rules of construction yield to the intention of the testator plainly ex-

pressed. Following the above statement of a rule is this qualification: "Where it appears from the language and provisions of the instrument that the testator referred to death either before or after his own, his intention will prevail," and we have seen that the words used in the will of John Fifer referred to death either before or after his own. That we are correct in our view, and that the statement relied upon by counsel does not apply to a provision like the one under consideration, is shown in volume 30 of the same work, at page 709, as follows: "It may be laid down as a general rule of construction, that where the context is silent, words referring to the death of a prior devisee or legatee, in connection with some collateral event, apply to the contingency happening at any time, as well after as before the death of the testator. The rule is generally the same whether the gift is immediate, as where the bequest is to A and if he die unmarried or without children or issue, to B, or postponed to a life interest, as to X for life remainder to A, and if A dies unmarried or without children or issue, to B." The cases of *O'Mahoney* v. *Burdett* and *Buchanan* v. *Buchanan* are cited, with many others, in support of the text.

There is a very full discussion of the subject in Jarman on Wills. In chapter 48 the author reviews the cases where a bequest is made to a person with a gift over in case of his death, and says: "The difficulty in such cases arises from the testator having applied terms of contingency to an event of all others the most certain and inevitable, and to satisfy which terms it is necessary to connect with death some circumstance in association with which it is contingent. That circumstance naturally is the time of its happening, and such time, where the bequest is immediate, (*i. e.,* in possession,) necessarily is the death of the testator, there being no other period to which the words can be referred." He declares it to be an established rule that where the bequest is simply to A, and in case of his death, or if he die,

to B, A surviving the testator takes absolutely. He says, however, that although in the case of an immediate gift it is generally true that a bequest over in the event of the death of the preceding legatee refers to that event occurring in the lifetime of the testator, this construction is only made, from the necessity of the case, on account of the absence of any other period to which the words can be referred, and, consequently, where there is another point of time to which they may be referred the rule gives way, as all rules of construction do in any case where the context shows a different intention. In chapter 49 cases are discussed where the testator by his words referred to a contingent event, and the obvious distinction between cases of that kind and those considered in chapter 48 is pointed out. As to the first class it is said: "There it was necessary either to do violence to the testator's language by reading the words providing against the event of death as applying to the occurrence of death at any time, 'in which sense death is not a contingent event,' or else to give effect to the words of contingency by construing them as intended to provide against death within a given period." As to the second class it is said that "the expositor of the will is placed in no such dilemma, for the testator having himself associated the event of death with a collateral circumstance, full scope may be given to his expression of contingency without seeking for any restriction in regard to time; and accordingly there seems to be no reason (unless it be found in the context of the will) why the gift over should not take effect in the event of the prior legatee's dying, under the circumstances described, at any period."

The general rule deduced from the cases is, that where the context is silent, words referring to the death of the prior legatee in connection with some collateral event apply where the contingency happens after as well as before the death of the testator; and this is in accordance with the rule of construction adopted by this court.

It is beyond question that the will of Theodore Harz was correctly construed in the case of *Kohtz* v. *Eldred,* 208 Ill. 60. In that case the testator, after providing for the payment of his debts and funeral expenses, made certain specific bequests followed by a gift of $2000 to his sister, Bertha Eldred. He then gave to his housekeeper, Ogda Palmquist, $1000. The residue of his estate, both real and personal, he gave to his executor in trust for his two children, but in case of the death of either of said children leaving no issue surviving them, the share of such deceased child was to go to the survivor of them, and if both should die leaving no issue surviving them or either of them, a different division of the estate was to be made by first paying to the housekeeper $3000 instead of $1000, and dividing the residue between his sister and certain nephews and nieces. He provided that if any of the nephews or nieces should die, the share of such deceased one should be divided among "the survivors of any of them." The will could only be executed by determining at the testator's death whether the housekeeper should have $1000 or $3000, and the testator clearly fixed the period of survivorship at his own death, when the legacy to the housekeeper would be payable. The trust created was only for the purpose of reducing to cash the estate remaining after the payment of the debts, bequests and legacies. That could only be done by determining the amount of the legacy to the housekeeper at the death of the testator.

In the case of *King* v. *King,* 215 Ill. 100, the testator devised real estate to his daughter, and provided that in case of her death without issue it should go to the lawful heirs, but in case she left one or more children the property should go to them when of age. It was held that the testator did not intend to refer to the death of his daughter before his own death, and it was said that the rule that where there is a bequest to one person absolutely and in case of his death without issue to another the contingency referred to is a

death in the lifetime of the testator, did not apply. The appellees, John H. Allen and Melissa E. Allen, are the owners, as tenants in common, of a base or determinable fee in the real estate in question, subject to an executory devise to appellant, John H. Fifer, in case of the death of said John H. Allen and Melissa E. Allen, or either of them, without a child or children living or in being at the time of the death of said appellee or appellees.

It is averred in the bill that Melissa E. Allen has cut and sold timber from the property, greatly reducing its value. A court of chancery will interfere to enjoin equitable waste by the owner of a base or determinable fee only when the contingency which is to determine the estate is reasonably certain to happen and the waste is of a character to charge the owner with a wanton and unconscientious abuse of his rights. (*Gannon* v. *Peterson, supra.*) The facts stated in the bill are not sufficient to justify a court in interfering.

The appellant, John H. Fifer, has no present estate in the land, having nothing but a mere expectancy, not capable of being valued and which may never have any existence. No estate has vested in appellant, and none ever will unless upon the happening of the contingency. (*Friedman* v. *Steiner,* 107 Ill. 125.) Appellant cannot recover for money paid voluntarily for taxes, and is neither entitled to the condemnation money nor is there any method by which he can call upon the court to protect an estate which may never vest. The right of appellant is not different in nature from an inchoate right of dower, and there is no way in which a court of equity, in its ordinary jurisdiction, can protect a mere expectancy. *Kauffman* v. *Peacock,* 115 Ill. 212.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*