## HORMANN v. NORTHERN TRUST CO. et al. (TANNER et al., Interveners), two cases.

### Nos. 7254, 7255.

Circuit Court of Appeals, Seventh Circuit.

July 10, 1940.

Rehearing Denied Sept. 23, 1940.

Writ of Certiorari Denied Dec. 16, 1940.

See 61 S.Ct. 394, 85 L.Ed. ——.

Hamilton Moses, Jr., of Chicago, Ill., for Anna E. and Theodore W. Tanner and Emily Tanner Pearson, appellants.

E. A. Ribal and T. N. Stensland, both of Chicago, Ill., for Northern Trust Co., appellant.

Wallace Reid, of Chicago, Ill., for John Russell Tanner and Wilbur Clark Tanner, intervening defendants-appellees.

Carl V. Wisner, Sr., and Carl V. Wisner, Jr., both of Chicago, Ill., for appellee Arthur T. Hormann.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This action involves the construction of the will of Sarah DeLoss who died, a resident of Cook County, Illinois, on November 14, 1906. The will was executed March 6, 1903, and a codicil thereto was executed March 12, 1906. Both were duly probated in the Probate Court of Cook County on January 9, 1907. Pursuant to the terms of the will and codicil, the Northern Trust Company was appointed as executor and trustee by that court.

The decedent left surviving, as her only heirs-at-law, her daughter, Florence Hor-

mann, and two sons, Charles C. and John C. Tanner. Florence died intestate December 21, 1926, leaving as her only heirs and next of kin, her husband, William F. C. Hormann, and her son, Arthur T. Hormann. The former died intestate April 7, 1936, and left as his only heir-at-law and next of kin, his son, Arthur T.

Charles C. Tanner died intestate May 22, 1936, and left as his only heirs-at-law his sons, Wilbur C. and John Russell Tanner. John C. Tanner died intestate on March 27, 1939, leaving as his only heirs-at-law his wife, Anna E. Tanner, his daughter, Emily Tanner Pearson, and his son, Theodore W. Tanner.

The action was instituted by Arthur T. Hormann against the Northern Trust Company. The complaint alleged that the company, as trustee under this will, had in its hands the sum of $34,680.68, with accrued interest from May 24, 1939, of which he was entitled under the will to be paid one half; that he had demanded payment of that amount of the trustee, which was refused, and he accordingly asked judgment for $17,340.34 with accrued interest since the death of John Tanner, and he further asked for an accounting.

By permission of the court, the above named heirs of Charles C. and John C. intervened as defendants. The heirs of John C. filed an answer, a counterclaim and a cross-claim. The counterclaim sought a construction of the will in such manner as to decree that plaintiff's claim was without right and unfounded, and that John Tanner at the time of his death had a vested one-half interest in the money and assets then held by the Trust Company as trustee, which passed by inheritance to his heirs-at-law when he died. The cross-claim was directed against the Trust Company and also asked for a construction of the will, an accounting of the trustee, and for a decree enjoining the Trust Company from delivery of any part of the funds in its hands to the plaintiff. The heirs of Charles Tanner also filed answers denying plaintiff's alleged interest in the fund, and asked the court to deny the prayer for relief sought by the heirs of John Tanner. They further filed a counterclaim in which they asked that the will be construed to give John Tanner a life estate in one half of the proceeds held by the Trust Company, and to declare it to be the intention of the testatrix to limit John's interest to a life estate. They likewise filed a cross-claim against the Trust Company in which they asked for an accounting, for construction of the will in such manner as to declare the testatrix intestate as to one half of the proceeds in the hands of the Trust Company, and that it be decreed to descend to the heirs of the testatrix under the laws of Illinois.

The Trust Company filed an answer to the complaint joining in a request for a construction of the will, asking for permission to file its final report as trustee, and upon its approval, that it be discharged as such trustee. Upon joinder of issues the case was submitted for trial without a jury, and the court made its findings of fact and rendered its conclusions of law thereon adverse to the heirs of John Tanner, and the decree was entered in accordance with the conclusions. The final decree further ordered the trustee to divide the fund in its hands within ten days, one half to plaintiff, and one fourth each to John Russell and Wilbur C. Tanner, subject to the costs and expenses of administration. It further ordered the trustee to file its supplemental final account, and upon the court's approval of the report it was decreed that the trustee should be discharged from its obligations under the will.

Prior to the filing of the findings of the court, all of the parties and their attorneys made applications for allowances for attorneys' fees and expenses to be charged against the estate of Sarah DeLoss in the hands of the Trust Company. After a hearing, the court disallowed all of these claims, except those filed by the Trust Company and its attorneys, which it reduced and allowed.

Subsequently, the Northern Trust Company filed its motion for a supplemental decree staying execution of the final decree pending the court's further disposition of the cause, or, in lieu thereof, for a modification of the final decree in such manner as to permit the Trust Company to deliver the securities and pay the moneys due Arthur T. Hormann, John Russell Tanner, and Wilbur Clark Tanner to the court, and be discharged as trustee. This motion was overruled, and the company appealed from both the final decree and the court's order denying its motion for alternative relief. Anna E. Tanner, Theodore W. Tanner and Emily Tanner Pearson appealed from the final decree.

The main question presented is, what estate did John Tanner receive under his mother's will, for whatever interest the appellants Anna E. and Theodore W. Tanner, and Emily T. Pearson have in that estate, if any, it is by virtue of inheritance as the wife and children of John.

The first three items of the will are not pertinent to the controversy.

Item 4 is as follows:

"I give and devise to the Northern Trust Company of Chicago, in trust however, for the purposes hereinafter specified, the following real estate, situated in * * (Chicago), to-wit: House and Lot known as No. 124 Honore Street, House and Lot known as No. 4033 Prairie Avenue, and The Flat Buildings known as Nos. 418 and 420 West Adams Street and the ground on which they are located.

"Said Northern Trust Company to take full charge of all of said property so devised to it, rent the same, collect the rents, and out of the income from said property, pay all insurance, taxes and assessments levied on said premises or liens of any kind, thereon, and make all repairs and improvements required to keep said premises in proper order and condition, and as soon after my death as practicable to sell and convey all of said premises and convert the same into money and divide the proceeds thereof as follows:"

(The proceeds from the sale of No. 124 Honore Street to be divided between her three sisters Sabille Williams, her heirs and assigns, Jessie Cooper and Martha Chestnut, all, share and share alike.)

"The proceeds from sale of No. 4033 Prairie Avenue and Nos. 418 and 420 West Adams Street, after paying all expenses chargeable to said premises, to be disposed of as follows:

"1st To pay the incumbrance, if any then existing on Nos. 418 and 420 West Adams Street, unless sold subject to such incumbrances.

"2d One Thousand Dollars to be retained and invested by said Trust Company, * * * (to be divided equally, with accumulations, between her grandchildren, John and Wilbur, respectively as each arrived at age of 21 years.)"

"3d The remainder of said proceeds to go to my two sons, Charles Tanner of Herrick Illinois and John Tanner of Chicago, but to be paid to them by said Trust Company in the following manner, the sum of Six Hundred Dollars per annum to be paid to said Charles Tanner, his heirs and assigns, in equal quarterly payments of One Hundred and fifty Dollars each and to said John Tanner, the sum of Six Hundred Dollars per annum, to be paid to him in like quarterly payments, and in case of the death of said John Tanner his share of said proceeds to become a part of my personal estate."

"5th * * (Provides that any money left by testatrix in bank, after payment of debts and funeral expenses, shall be included in the devise to the Trust Company, to be applied by it on any unpaid incumbrance on the Adams Street property. Any part of such money left in bank not so required, to become a part of testatrix' personal estate.)

"6th * * (leaves sales and investments, as to times and amounts, to discretion of Trust Company.)

"7th I also give and bequeath to my said Daughter, Florence Hormann, all of my personal estate of every kind not hereinabove specifically bequeathed, including any money that may become a part of my estate by reason of the happening of any contingency herein mentioned, or by reason of the lapse of any money bequest.

"8th * * (Appoints the executor and trustee.)"

The content of the codicil is not material to the question before us.

It is contended by the wife and children of John that the devise to him was without restriction, except as to the trust, provided he survived his mother. He having survived her, they claim the devise, by inheritance, as his only heirs. This contention is based upon the conceded rule of construction of wills that when there is merely a devise to A and in case of A's death to B, and there is no other context, the death referred to is construed as the one occurring during the lifetime of the testatrix. Fifer v. Allen, 228 Ill. 507, 81 N.E. 1105; Tomlin v. Laws, 301 Ill. 616, 134 N.E. 24, 26 A.L.R. 606; DeHaan v. DeHaan, 309 Ill. 323, 141 N.E. 184, and analogous cases.

However, appellee Hormann contends, and the court so found, that the devise to John is not a devise simpliciter, or a mere devise which is inheritable from him by his heirs, but that it was one which ended at his death at any time and reverted to the estate to be disposed of under the re-

siduary clause, that is to say, it went to plaintiff as the surviving heir of his mother.

■ Rules for the construction of wills are never applicable where the intention of the testator is clear and unambiguous, for, after all, the intention of the testator is the polestar by which the court is guided. Quite early in our judicial history, as well as in England, the question arose, where a bequest was made to a person, with a gift over *in case of his death,* whether the testator used the words *"in case of,"* in the sense of *at* or *from,* and thereby as restrictive of the prior bequest to a life interest, that is to say, as introducing a gift to take effect on the death of the prior legatee under all circumstances, or with a view to create a bequest in defeasance of or in substitution for the prior one, in the event of the death of the legatee in some contingency. Jarman, in his Treatise on Wills (6th Am.Ed.1893), Ch. 48, says:

" * * The difficulty in such cases arises from the testator having applied terms of contingency to an event (death) of all others the most certain and inevitable, and to satisfy which terms it is necessary to connect with death some circumstance in association with which it is contingent; that circumstance naturally is the time of its happening; and such time, where the bequest is immediate (i. e., in possession), necessarily is the death of the testator, there being no other period to which the words can be referred.

"Hence it has become an established rule, that where the bequest is simply to A., and *in case of his death,* or *if he die,* to B., A surviving the testator takes absolutely. * * *"

That author further says, however, that such construction is only made, from the necessity of the case on account of the absence of any other period to which the words can be referred, and, consequently, where there is another point of time to which they may be referred, the rule gives way, as all rules of construction do in any case, where the context shows a different intention. This rule has been adopted by the courts of Illinois for many years (Fifer v. Allen, supra), and by all other courts of this country, so far as we know.

■ We are to decide first whether there was a simple devise to John of the property which the 3rd paragraph of the 4th item of the will purported to give him. This property consisted of certain *proceeds* from the sale of certain real estate which the will devised to the Northern Trust Company, in trust for the purposes of sale and the distribution of the proceeds, as soon as practicable after the testatrix' death. There can be no doubt that this devise passed complete title of the real estate to the trustee, and it was the obvious intention of the testatrix that its deeds should convey complete title, for in the 6th item of her will she directed that any purchaser should not be required to look after the application of the purchase money.

Out of the proceeds of these sales certain payments were directed to be made. Then follows paragraph 3 of the 4th item, which begins: "The remainder of said proceeds to go to my two sons, Charles Tanner * * * and John Tanner * * *." Aside from other contexts, presently to be mentioned, this would obviously constitute a simple devise, or devise simpliciter as some are wont to call it. However, the quoted clause is followed by a comma, and the following: "but to be paid to them by said Trust Company in the following manner, the sum of six hundred dollars per annum to be paid to said Charles Tanner, his heirs and assigns, in equal quarterly payments of one hundred and fifty dollars each and to said John Tanner the sum of six hundred dollars per annum, to be paid to him in like quarterly payments, and in case of the death of said John Tanner his share of said *proceeds* (our italics) to become a part of my personal estate." It will be noted that the last quoted portion, except the last clause, refers only to the manner of payment of the devises, and we are unable to perceive that the manner of payment, or/and the further fact that the money was to be held for distribution by a trustee would in any manner change the character of the devise.

Appellee Hormann maintains that a gift or devise simpliciter does not take effect where a trust intervenes, or where the gift is less than a fee, citing Fitchie v. Brown, 211 U.S. 321, 29 S.Ct. 106, 53 L.Ed. 202; Millikin National Bank v. Wilson, 343 Ill. 55, 174 N.E. 857, 75 A.L.R. 117; Kolb v. Landes, 277 Ill. 440, 115 N.E. 539; Winter v. Dibble, 251 Ill. 200, 95 N.E. 1093; Fifer v. Allen, 228 Ill. 507, 81 N.E. 1105; Tilson v. Allen (British), 1 Russ. &

M. 553; Kales, Estates Future Interests (2nd Ed.) § 530; and Jarman (6th Am. Ed.) Vol. 2, p. 690, et seq. None of these authorities holds that an intervening trust for the mere purpose of sale of assets and distribution of proceeds will in any way affect a prior simple devise. That the rule will not operate on any devise which conveys less than a fee, may be assumed without admitting. That question is not before us, for here the testatrix reserved no part of the title to the proceeds devised to John and Charles. For reasons best known to herself, she directed that the devise be made in payments and appointed a trustee for that purpose. It must be emphasized that it was not merely the net earnings of the corpus which she directed to be paid to her sons, it was the corpus itself. The vesting of the title to the corpus in John and Charles was immediate upon the death of the testatrix. It was in their possession through the offices of a trustee who held possession for them. There were no conditions precedent as to the vesting of title, nor was there any contingency, an event which might or might not happen, that would defeat the devise, unless the fact of John's death after the death of his mother would be effective for that purpose. However, the rule prohibits such a construction. It furnishes the necessary and only circumstance in association with which John's death is contingent, which is his death before that of his mother.

■ Of course, the rule must not be applied to destroy the clearly expressed intention of the testatrix, and if there are other contexts in the will which clearly show an intention to avoid the effect of the rule, it is our duty to protect and enforce that intention. However, we find no such contexts. It is true that in directing the quarterly payments to Charles, she added after his name the words "his heirs and assigns," and she omitted those words in directing like payments to John. However, these words add nothing to the character of Charles' title. They are words of limitation which merely indicate, but are not creative of, an inheritable right. That right is statutory. It is worthy of note that in the devise to her three sisters, the testatrix likewise added the same words after her first named sister and omitted them after the other two. This only indicates harmless negligence and is of no effect.

■ Again, it is urged by appellees that a contrary intention of the testatrix is clearly established by the fact that she did not, as in the case of John, provide that in case of the death of Charles his share of the proceeds should become a part of her personal estate. If, as we hold, there was a simple devise to both sons, it would make no difference, under the rule, whether or not the death clause were added to either or both of them, for upon the death of either before the mother's death, the devise would lapse and become a part of her personal estate.

■ If, however, the rule is not applied, the interest devised to Charles descended upon his death, to his children; and upon the death of John his interest did not descend to his wife and children, but went to plaintiff under the residuary clause of the will, as the only heir of testatrix' deceased daughter. We are unable to reconcile such intention with the simple devise to John of one half of the "remainder of said proceeds." Our duty is to consider every item of the will and to construe them in such manner as to give effect to each, if possible. This we think can be done with this will, only by applying the rule.

■■ Appellee Hormann filed a motion in this court asking us to dismiss the appeal, or in the alternative to affirm the decree. In explanation of our refusal to dismiss the appeal, it is fair to say that this phase of the motion was based on the fact that appellants had not incorporated in the record the transcript of all of the testimony. It is obvious from the court's memorandum and from the motion itself, that this refers to certain testimony, not divulged, calculated to show the facts and circumstances surrounding the testatrix at the time she made her will. So far as we are informed there was no further testimony offered. It was received subject to appellants' objections, and afterwards the court sustained the objections, and no exceptions were saved to that ruling. Under these circumstances, we think the error, if any, must have been the court's ruling in sustaining the objections to the evidence, and that question is not presented, nor is the proffered evidence before us. Moreover, the rule provides that it shall be applied under the conditions named, unless other contexts of the will clearly disclose a different intention. We do not understand that this provision can be ex-

tended to include outside circumstances and statements, even those of the testatrix, in order to avoid the rule. The entire will is before us, and that would seem to be sufficient.

■ It is further contended by appellee Hormann that the trust created by subparagraph 3 of item 4 would be void, as violative of the rule against perpetuities, unless the devise is construed as the District Court construed it. This could be true only in case the devise was not a devise simpliciter. It is sufficient to say that we hold that the devise was a gift simpliciter.

■ It is further contended that plaintiff and John Tanner and the children of Charles Tanner by their conduct accepted the construction of the will which the District Court placed upon it, and they are bound by that construction. The conduct referred to consists of a contract between these parties and the trustee shortly after the death of Charles Tanner. This contract merely provided that the trust should be carried on as it had been, except that Charles' quarterly payments were to be paid to his two sons. This was to continue until the death of John, and the earnings, if any, were to be accumulated, at which time the portion held for the children of Charles should be assigned to them in equal proportions, and the portion theretofore held in trust for John, together with all accumulations, should be distributed in accordance with the provisions of the will, or as all parties interested therein might agree. We find nothing in this contract that would bind the heirs of John to any particular construction of the will.

■ The Northern Trust Company contends that the court erred in denying its motion to enter an order staying the execution of the decree, or, in lieu thereof, an order permitting the defendant to deposit the money and securities in controversy in court and discharging it as trustee. The court in its order did provide for the discharge of the trustee at its request, upon the filing and approval of its final report. It denied permission to stay the execution or to permit the deposit of the money and securities in court. The denial of such relief is peculiarly within the discretion of the trial court. We feel that the Trust Company should be protected against any undue liability or any embarrassment on account of probable liability, but we are unable to perceive how

such liability could arise, and for this reason we cannot say that the court abused its discretion or was guilty of any error in its order.

■ Counsel for all the parties contend rather vigorously against the court's disposal of their several petitions for attorneys' fees and expenses, which we have hereinbefore referred to. These matters are quite largely within the discretion of the District Court, and we cannot say that that discretion has been abused.

The decree is reversed and the cause is remanded with instructions to proceed in accordance with this opinion.