(Decided June 23rd, 1897.)

---

## RICHARD L. R. BENTZ ET AL. vs. THE MARYLAND BIBLE SOCIETY ET AL.

*Devise and Legacy— Termination of Trust Estate—Bequest Over in the Event of a Legatee's Dying Without Issue Before a Certain Time.*

When a trustee under a will is directed to distribute a fund at the expiration of a certain period to a designated legatee and there is a direction that upon the death of such legatee without issue the fund shall go to other parties, then it is *prima facie* the intention of the testator that the death without issue of the first legatee means such death before the time for distribution and that at such time he is entitled, if living, to take the property absolutely.

Property was bequeathed to a trustee to hold the same for ten years, paying the income thereof to A. and B., and at the expiration of the ten years to pay over the whole amount in equal ·shares to A. and B. "absolutely, free and discharged of all trusts to them and to their children." The will further provided that if A. and B. or either should die leaving no child surviving them, then "whatsoever of my estate thus given shall remain in their or his possession at the time of so dying shall go to and become the property of" M. The ten years have elapsed and A. and B. are both living, each with several children. *Held*, that A. and B. are now entitled each to one half of the estate absolutely, free from any trust.

· Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), by which it was adjudged " That by the true interpretation of the last will and testament of Elizabeth Henderson, deceased, the defendants, John Henderson Bentz and Richard L. R. Bentz, are each entitled to

a life-estate only in one-half part of that portion of the estate of the said Elizabeth Henderson which passed under the residuary clause of her said will to the Safe Deposit and Trust Company of Baltimore, in trust for the purposes therein mentioned, and that such of the children or descendants of the said John Henderson Bentz, as may survive him, are entitled *per stirpes* to the remainder in that portion of the property of the said testatrix, Elizabeth Henderson, in which their said father, John Henderson Bentz, is entitled to such life-estate; and such of the children or descendants of Richard L. R. Bentz as may survive him, are entitled *per stirpes* to the remainder in that portion of the property of the said testatrix, Elizabeth Henderson, in which their said father, Richard L. R. Bentz, is entitled to such life-estate; provided, however, that if the said John Henderson Bentz and Richard L. R. Bentz, or either of them, shall die leaving no child or descendant him or them surviving, then, and in that event, that portion of the estate in which the one so dying without leaving a child or descendant surviving him was entitled to a life-estate, shall go to and become the property of the Maryland Bible Society, to whom, by the true interpretation of the said last will and testament, the same is in that event by said will devised.  And it is further adjudged, ordered and decreed that the Safe Deposit and Trust Company of Baltimore do, under the authority and direction of this Court, make investment of all the net funds of the estate heretofore held by it as trustee for the said John Henderson Bentz and Richard L. R. Bentz, so as to secure the dividends, interest or income therefrom to the said legatees for life, and the principal, after their respective deaths, to the hereinbefore mentioned legatees in remainder."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*Edgar H. Gans* and *Charles McHenry Howard* (with whom was *B. H. Haman* on the brief), for the appellants.

It is evident that the will before the Court is not care-

fully and technically drawn.   But all apparent inconsisten-
cies are cleared up if we consider the true nature of the gift
to the children of the immediate beneficiaries in the clause
which is the residuary.   If we consider this gift to have
been substitutionary or alternative, instead of consecu-
tive, all the difficulties are at once removed.   A simple
change of one word, though not necessary to give the clause
this meaning, yet will serve to show more plainly the nature
of the construction contended for.   In trust, " at the expi-
ration of said ten years to pay over the whole of said rest,
residue, &c.," " to the said John Henderson Bentz and
Richard L. R. Bentz absolutely, free and discharged of all
trusts, to them *or* to their children after their death, the
children to take among them equally the share of their
father."   The word " or " will be construed " and " and
*vice versa* whenever necessary to effectuate the intention of
the testator, and this is the most common of verbal altera-
tions made.   I *Jarman on Willis*, 483, &c.   Perhaps the
disjunctive character of the expression will be brought out
more clearly if instead of substituting " or " for " and " we
merely insert the word " if."   " To pay over, &c., to them
and to their children *if* after their death, the children to take
among them equally the share of their father."

But the above alterations are not necessary to show the
true meaning of the substituted gift.   It appears from the
grammatical structure of the clause as it now stands, for the
preposition " to " is governed by the antecedent words " pay
over."   It is not pretended that the trust is to continue
after the expiration of the ten years, and hence it is at the
end of this period that the paying over is to take place, and
such paying over of the fund is, moreover, to be done by
the trustee.   This fact is sufficient to indicate that the pay-
ing over is to be made to the children only *in the event of
the death of the appellants before the time of distribution.*   In
fact, the question is the old and familiar question of whether
death at any time, or death before a certain time, is meant ; a
question which, in a slightly different shape, has frequently

been before this Court. The following expressions have all been construed to refer to death at or before the expiration of some period, rather than to death at any time : "In case of death:" *Dorsey* v. *Dorsey*, 9 Md. 31 ; *Hill* v. *Hill*, 5 G. & J. 87. "May have died:" *Engel* v. *Geiger*, 65 Md. 539. "In the event of death:" *Fairfax* v. *Brown*, 60 Md. 50 ; *Hammett* v. *Hammett*, 43 Md. 307.

The word "after" of course, ordinarily refers to death at any time, but is here controlled by the context. There is a well-considered line of cases in the English Courts, followed by the Courts in this country, wherever the question has arisen, which illustrates very clearly the controlling effect of words directing a payment or distribution at some certain time (as in the present case), upon expressions which would otherwise refer to death at any time. These cases have arisen upon the following point : The expressions "if A die unmarried," or "if A die without children," &c., when coupled with a gift over, as a general rule of construction, apply to the contingency happening at any time. 29 *Am. & Eng. Ency. of Law*, 504. But, like all other words and phrases, they are governed by the context, and where such context shows that death at any time is not intended, their meaning is restricted, just as it is claimed that the otherwise general effect of the word "after" is restricted in the present case. *Theobald on Wills*, 452, &c., 3d edition.

We will next consider the effect of the gift over to the Bible Society in the following clause. This gift is made in very different language from that employed in the gift to the children in the antecedent clause, and it is evident that the words here employed refer to death at any time. To borrow the words of Mr. Theobald, quoted above, the Bible Society "is not contemplated as taking through the medium of the trustee." The decree of the Circuit Court has construed this gift to the Bible Society as alternative or substitutionary to the gift to the children ; instead of construing the latter gift as substitutionary to the gift to these

appellants.   That the gift to the Bible Society is not alternative to the gift in favor of the children is apparent from the totally different language employed in the two cases. In the gift to the children, the fund is to be paid over to them by the trustee.   Then in a new paragraph, introduced by the words " And it is further my will," the testatrix expresses a wish that if either of the appellants shall die, leaving no child or descendant surviving, whatever shall remain in his possession at the time of so dying, shall go to and become the property of the Bible Society.   The gift to the children is a part of the instruction to the trustee ; the gift to the Bible Society is put as the expression of a wish as to what shall become of the property which shall remain in the possession of the beneficiaries at their death ; and furthermore is made, not in default of children, but in default of " child or descendant surviving."

Now, if we adopt the construction of the gift in favor of the children which, we respectfully submit, we have shown to be in conformity with the intention of the testatrix, there is no conflict or difficulty whatever in the construction of the clause in favor of the Bible Society.   After providing for the termination of the trust and the distribution of the fund, the testatrix proceeds to express a wish, or to direct, how any portion of the fund which may remain in the possession of these appellants at their death, shall go.   The law upon the subject of such dispositions whether attempted by way of request (*Nunn* v. *O'Brien*, 83 Md. 198), or of absolute direction (*Combs* v. *Combs*, 67 Md. 11), is well settled. Such a gift over of what may remain, limited after an absolute gift to the first taker, is void for uncertainty.

The rules which may be deduced from the authorities may be briefly stated as follows :

In the absence of any decisive intention to the contrary, the words " whatever may remain " imply an absolute power of disposition in the first taker.

If the gift to the first taker is clearly and expressly for life, then the estate is a life-estate with full power of dispo-

sition in the life-tenant, and the gift over is valid as to what remains undisposed of at his death.

If the gift to the first taker is general, indefinite or ambiguous, then these words amplify the estate into an absolute one, and the gift over is void.

The following cases are illustrative of these rules : *Ramsdell* v. *Ramsdell,* 21 Me. 288 ; *Pickering* v. *Langdon,* 22 Me. 413 ; *Stuart* v. *Walker,* 72 Me. 145 ; *Pierce* v. *Simmons,* 16 R. I. 689 ; *McKenzie's Appeal,* 41 Conn. 607 ; *Harris* v. *Knapp,* 21 Pick. 412 ; *Bowen* v. *Dean,* 110 Mass. 439 ; *Kelley* v. *Meivs,* 135 Mass. 231; *Matter* v. *Cager,* 111 N. Y. 343 ; *Van Horne* v. *Campbell,* 100 N. Y. 287 ; *Leggett* v. *Firth,* 132 N. Y. 7 ; *Kendall* v. *Case,* 84 Hun. 124 ; *Flanagan* v. *Flanagan,* 8 Abbott, N. C. 417 ; *Thomas* v. *Wolford,* 49 Hun. 145 ; *Burleigh* v. *Clough,* 52 N. H. 267 ; *Roberts* v. *Lewis,* 153 U. S. 367. See also following Maryland cases : *Nunn* v. *O'Brien,* 83 Md. 198 ; *Combs* v. *Combs,* 67 Md. 11; *McClernan* v. *McClernan,* 73 Md. 283 ; *Benesch* v. *Clark,* 49 Md. 497 ; *Williams* v. *Worthington,* 49 Md. 581; *Foos* v. *Scarf,* 55 Md. 301; *Corporation* v. *Hammond,* 1 H. & J. 580 ; *Mines* v. *Gambrill,* 71 Md. 34.

*Samuel D. Schmucker* (with whom was *George Whitelock* on the brief), for the appellees.

There is no contention in this case that there is any such ambiguity in the terms of the will as would admit parol testimony to aid in its construction, and no testimony was offered for that purpose. The intention of the testatrix must, therefore, be ascertained from the terms of the will itself.

I. It is respectfully submitted that the gift made by the will to the testatrix's nephews, John and Richard, was only a life-estate, because : (*a.*) The expressions employed by her in disposing of the residue of her estate indicate, when interpreted according to their *usual and ordinary signification,* a purpose to limit the estate of the nephews to their lives; and (*b.*) Because in general the Courts, including the

Court of Appeals of Maryland, have, in similar cases, construed these same expressions, when used by testators, to create only a life-estate.

It is not necessary, in order to limit the interest of a devisee to his life, that the testator use the designation, " life-estate," in making the gift. Any words which, by their reasonable and ordinary signification, indicate the devisee or legatee is to have only a life-interest in the property given to him, will limit his interest to a life-estate. If the estate be given to the legatee *for his life,* or *until his death,* or, if it be given to him, *and after his death to another,* the intention is equally clear that the first taker's interest in the property is to cease at his death. In the present case the property was given to Richard and John, " to them and *to their children after their death."* The limitation is not to them *and* their children, but it is " to them and *to* their children *after their death."* The repetition of the preposition " to " indicates that the estate was to flow from the testator to the life-tenants and also to their children, and negatives the presumption that the word " children " is to be considered as a word of limitation merely. *Jeffrey* v. *Honeywood,* 4 Mad. 398.

It has been clearly determined, both in Maryland and elsewhere, that a gift to a person, " and, *after his death,* to his children," creates, *ex vi termini,* a life-estate in A, with remainder to his children, as in the present case. *Jarman on Wills,* vol. 2, \*page 1242, declares this to be, upon the authorities, the law as " now admitted on all hands." The Court, in *Stonebraker* v. *Zollickoffer,* 52 Md. 160, in discussing the effect of the limitation in that case, say : " If, therefore, this were a devise to the first devisee, and, after his death, to his children, without anything more, it is clear, upon the authorities, that the first devisee would take but a life-estate, with remainder to the children, who would take by way of purchase, and not by descent." See to the same effect : *Constable* v. *Bull,* 3 DeGex & S. 411; *Bibbens* v. *Potter,* 10 Chancery Div. 733.

" Children " is almost invariably a word of purchase, and not of limitation. *Stonebraker* v. *Zollickoffer*, 52 Md. 154; *Stump* v. *Jordan*, 54 Md. 619; *Henderson* v. *Henderson*, 64 Md. 185.

II. The present case is especially strong in support of the construction which gives only a life-estate to the first taker by reason of two circumstances, each of which has received due recognition and been relied upon by the Court of Appeals in *Stonebraker* v. *Zollickoffer*. They are as follows: (*a.*) The will disposes of the estate after the death of the first taker, "both in the event of his dying leaving children and of his dying without leaving children." *Stonebraker's case*, 171. (*b.*) The fact that "superadded to the words child or children we have appropriate words of distribution in the gift to the second takers." *Stonebraker's case*, 161.

The appellants contended in the Court below that the use of the word *absolutely* in connection with the gift of the life-estate to John and Richard in this case indicates that their estate was not to be a life estate. It is perfectly clear from the context that the word absolutely as used in this will in connection with the immediately following words " free and discharged from all trusts," and as applied to the expiration of the trust estate and the commencement of the legal estate in John and Richard, simply indicates that the estate is at the expiration of ten years to be absolutely freed from the trust and is to be a legal estate. The word " absolute " was evidently used by the testratrix to describe the quality, and not the quantity, of the estate given to the nephews. "Absolutely" has been held not to be a proper word to distinguish a fee from a life-estate. *Greenwalt's case*, 71 Pa. State, 483–487.

III. There is no express disposition or direction in the subsequent part of the will professing to enlarge the life-estate given to John and Richard. The attempt of the appellants to do this rests solely upon the contention that such enlargement of the life-estate is to be implied or inferred from the

subsequent use in the will of the expression "whatever of my estate thus given shall remain in their or his possession at the time of so dying." And also the words "shall die leaving no child or descendant." It is to be observed that neither of these expressions is used in connection with the gift of the remainder to the children of John and Richard, but the expressions are employed *only in connection with the contingent limitation over to the Bible Society* in the event of the total failure of issue to John and Richard. To give, therefore, to these expressions such a construction as would defeat the remainder to the children of John and Richard when they have not been used in connection with the gift of that remainder would do gross violence to the correct principles of construction of wills.

The authorities are not at all uniform as to the effect upon the estate of the first taker of the use of the words "whatever remains," &c., or similar expressions by a testator in the gift over of the estate at the termination of the interest of the first taker. Very much, of course, depends upon the context and the general scheme of the particular will in which the expressions are used. When used in some wills they have been held to imply a fee, or, at least, an absolute power of disposition in the first taker, and when used in other wills they have been held to do nothing of the kind. The Courts do not attach the same importance to the use of these words where the gift to the first taker is in terms a life-estate as where the gift to him is made in general or indefinite terms. Even after making due allowance for the difference in the language used in the wills construed by the various authorities, there remains a want of harmony in the decisions interpreting the expressions in questions and others of like import. In the cases of *Constable v. Bull*, 3 DeGex & S. 411 ; *Gibbs* v. *Tait*, 8 Simm. 132 ; *Bibbens* v. *Potter*, 10 Chancery Div. 733, and *in re Thomson's estate*, 14 Chancery Div. 263, such expressions have been held not to enlarge the life-estate of the first taker. In the case of *DuHamel* v. *Ardovin*, 2 Ves. Sr. 162, the Court held that such

an expression meant simply the residue of such estate.  See also, 1 *Jarman on Wills*, \*page 333 ; *Green* v. *Hewitt*, 97 Ill. 113 ; *Smith* v. *Bell*, 6 Peters, 68, 76.

V.  The counsel for the appellants suggested below that the gift to John and Richard, and that to their children, should be treated as substitutional gifts, as the intention of the testarix may have been, that the children of John and Richard were only to take in case their parent should be dead at the expiration of the ten years during which the estate was to be held in trust.   The appellees submit that this contention cannot be successfully maintained.   A substitutional gift is, in its essence, an alternative one, and it must appear from the will that the testator intended that either one or the other of the devisees should take the gift, and not that they should both take concurrently or in succession.  The doctrine of substitutional legacies rests largely upon an attempt of the Courts to prevent a lapse.   [See cases cited under note (o), page 504, vol. 2, *Williams on Executors*].   The doctrine may be briefly stated as follows : When a bequest is made to A *or* his children, or to A *or* his issue, or to A *or* his heirs, or to A *or* his descendants, a question may arise whether the children or descendants, or issue, are to take concurrently with A, or merely in substitution of him, in case of his death before the testator. But where the gift is to *A and* his issue, or A *and* his children, as in the present case, it has repeatedly been held to be a gift to the parent for life, with remainder to his children, and not a substitutionary gift.   *Williams on Executors*, 7th Am. ed., vol. II., pages 393–5, and 500–504, \*977–980, and \*1075–1080, contains a full and clear discussion of the subject of substitutional bequests, and cites many authorities in support of the propositions contended for by the appellees in this case.   The language used by the testatrix in the present case could not, without a violent strain, be interpreted to mean that the children of her nephews, John and Richard, were to take by way of substitution for and alternatively with their parents at the end of ten years, instead

of taking *after their parents' death*, as the will plainly declares that they shall do.

FOWLER, J., delivered the opinion of the Court.

This appeal brings before us for construction the will of the late Elizabeth Henderson, of Baltimore City. She devised and bequeathed all the rest and residue of her estate as follows:

" All the rest, residue and remainder of my estate and property of every kind, nature and description whatsoever, whether in possession at the time of my death or in expectancy, remainder or reversion, I give, devise and bequeath to the Safe Deposit and Trust Company of Baltimore City in trust, to hold the same for ten years after my death, safely and profitably invested, and to pay the income, as it is received, in equal shares to John Henderson Bentz and Richard L. R. Bentz, grandsons of my sister Caroline Jane Bentz, and at the expiration of said ten years to pay over the whole of the said rest, residue and remainder of my estate and property, in equal shares to the said John Henderson Bentz and Richard L. R. Bentz absolutely, free and discharged of all trusts, to them and to their children, after their death, the children to take among them equally the share of their father."

" And it is further my will that if the said John Henderson Bentz and Richard L. R. Bentz, or either or them, shall die leaving no child or descendant them or him surviving, then in that event, whatever of my estate thus given shall remain in their or his possession at the time of so dying, shall go to and become the property of the Maryland Bible Society, and I hereby give, devise and bequeath the same to the said society to be used in its work of distributing the Holy Scriptures."

The controversy here arises out of the several contentions as to the meaning and proper construction of the foregoing clauses. The trustee, the Safe Deposit and Trust Company of Baltimore City, filed the bill to obtain the aid of the

Court in making distribution in accordance with the will of the testatrix as properly construed. Ten years have elapsed since the death of the testatrix, and both of the legatees first named in the residuary clause, John Henderson Bentz and Richard L. R. Bentz are still living, each of them having several infant children, who, as well as the Maryland Bible Society, are parties to this proceeding. It was held by the Circuit Court that Richard and John each take only a life-estate in half of the residuary estate, the share of each to go at his death to his children then living, *per stirpes*, and in default of such to the Bible Society. The trustee was directed to invest the net funds of the estate and pay the income therefrom to Richard and John for life, and the principal after their respective deaths to the above mentioned legatees in remainder. From this decree the two grand-nephews of the testatrix have appealed, their contention being that they are entitled to the whole residuary estate absolutely, while the appellees contend that the appellants take only a life-estate and that the remainder goes as directed by the decree.

It appears to us upon a careful reading and consideration of the language of the testatrix that her intention was to give to John and Richard, her grand-nephews, each one-half of her residuary estate absolutely, if they should be alive at the expiration of ten years after her death. We will briefly state the grounds of this conclusion.

The most cursory reading of the residuary clause shows that the trustee at the end of ten years after the death of testatrix, was to pay over the whole trust estate absolutely, free and discharged of all trusts. Now, to whom was this payment directed to be made? To John and Richard "absolutely, free and discharged of all trusts to them and to their children after their death, the children to take among them equally the share of their father." We think the meaning of the testatrix is quite apparent, when we remember that the payment was to be made whether to the fathers or their children by the same trustee *at the end of ten years*

*after her death.* And this being so we cannot suppose that in the same breath the testatrix intended to provide for the continuance of the trust during the joint lives of the fathers. The trust was to end at the time named by the testatrix, and if John and Richard should be living at that time, they are to take absolutely. But if either of them should die before the period for distribution, that is, within ten years after the death of the testatrix, then the share of the one so dying is to be paid absolutely to his children. In view of the language limiting the duration of the trust, it seems to us impossible to discover from the residuary clause any other intention. And although we do not consider it necessary to cite authorities to sustain this conclusion, based as it is upon the particular will before us, yet there are some general rules which seem to apply here with more than usual force. Thus one of these is mentioned in *Theobald on Wills*, 452, where it is said, "If the fund is vested in trustees who are directed to distribute it at a certain time, so that the trusts then determine, and the legatees who are to take upon the death of the prior legatees without issue are contemplated as taking through the medium of the same trustees there is *prima facie* reason for restricting the death without issue to death without issue before the period of distribution." This rule is also quoted in 29 *Am. & Engl. Encyl. of Law*, 506, with a number of authorities to sustain it, to which many have been added on the brief of the appellant. But we need not extend this opinion by a discussion of them, for the same general principle has been approved by this Court in the cases of *Hammett* v. *Hammett*, 43 Md. 307, and *Fairfax et al.* v. *Brown*, 60 Md. 61. In the first case just mentioned the testator gave half his property to his widow during her widowhood and further provided if she should marry again, as follows : " I devise the same to my two children equally, and should one of them die the property to go to the survivor." The widow married and the two sons survived her marriage, and it was held that the estate vested in the children on the marriage

of their mother, and that the words " should one of them die," should be construed to mean " should one of them die before the marriage of their mother."

But when we consider the remaining paragraph of the residuary clause there would seem to be but little room for doubt as to the intention of the testatrix to give her grand-nephews an absolute estate with full power of disposition. She declares that if John and Richard or either of them shall die leaving no child or descendant surviving then whatever of her residuary estate should remain in their or either of their hands, should go to the Bbile Society.

In the first place it is apparent from this language that the testatrix intended that they should have the estate in their possession, and should also have the power of dispo-sition over the whole of it; for it was only what should remain that was to go to the Bible Society. Having thus full power of disposition and having also full possession, and as we have said there being no express language creating a life-estate they take the residuary estate absolutely. And to this effect is *Benesch* v. *Clark, &c.*, 49 Md. 497. See also *Foos* v. *Scarf*, 55 Md. 310; *Mines* v. *Gambrill*, 71 Md. 34; *Roberts* v. *Lewis*, 153 U. S. 367.

Inasmuch as the decree appealed from continues the trust during the lives of John and Richard, while the testatrix, as we construe her will, intended it should end in ten years from her death, and inasmuch as said decree gives to the appellants only a life-estate while our conclusion is that they take an absolute estate, we must reverse it.

> *Decree reversed and cause remanded.*
> *Costs to be paid by the trustee out*
> *of the trust funds in its hands.*

(Decided June 23rd, 1897.)