WILLIAM M. SPENCER *et al.* Plaintiffs in Error, *vs.* LULU SPENCER, Defendant in Error.

*Opinion filed June 24, 1915.*

1. WILLS—*courts endeavor to give effect to the testator's intention.* In construing a will the chief purpose of the courts is to ascertain the intention of the testator and give effect thereto if it can be done without violating some established rule of law or public policy, and to find the true intention the will and codicils and all of their parts must be construed together.

2. SAME—*clauses providing for reversion in case of death of the legatees without issue construed.* Clauses of a will providing "that in case any of my said children die without issue that the provisions made in this will for such children shall revert to my estate, to be distributed in accordance with the provisions of this will," and "that none of the proceeds of my estate herein provided for my said children shall go to or be possessed or enjoyed by any person or persons not related to me by blood," do not necessarily mean that none of the proceeds of the testator's property shall ever be held by strangers to the blood, but rather that the proceeds, at the time they are distributed, shall not go direct to strangers.

3. SAME—*usual meaning of the words "death without issue."* The general rule is that words in a will referring to the death of the legatee "without issue" mean death without issue either before or after the death of the testator, but the context of the will may be such as to show that the testator intended to limit the mean-

ing of the words to death without issue during the lifetime of the testator.

4. SAME—*construction of words "death without issue" where fund is in trustee.* Where the fund created by a will is vested in a trustee, who is directed to distribute it at a certain time, so that the trusts then determine, and the legatees who are to take upon the death of prior legatees "without issue" are contemplated as taking through the medium of the same trustee, the words "death without issue" mean death without issue before the time of distribution, and if the prior legatees are living at the time of distribution they are entitled to take, regardless of whether they have children. (*Lachenmyer* v. *Gehlbach*, 266 Ill. 11, approved.)

5. SAME—*when interests of minors do not vest until time of distribution.* Where a will provides that the trustee shall hold the shares of minor children until they become of age, using the income for their education, and further provides that in case any of the testator's children shall die without issue their shares shall revert to the estate, to be distributed in accordance with the will, the interests of the minors do not vest until they become of age.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

LIVINGSTON & BACH, (SIGMUND LIVINGSTON, of counsel,) for plaintiffs in error.

JACOB P. LINDLEY, guardian *ad litem.*

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of McLean county to construe the will of William Spencer, deceased. From the decree entered construing the will this writ of error was sued out.

William Spencer died on June 25, 1913, leaving a will dated June 30, 1902, and three codicils, dated, respectively, August 10, 1904, August 28, 1907, and June 4, 1908, all being duly probated. He died seized of a farm worth about $80,000 and certain personal property. The first clause of the will provided for the payment of his just debts and funeral expenses, and the will continued:

*"Second*—I hereby give and devise and bequeath in trust for the use and purpose hereinafter mentioned, to my friend William R. Hougham, all my estate, both real and personal, except my household goods, to be by him converted into money as hereinafter provided.

*"Third*—I hereby order and direct that my executor and trustee proceed with reasonable diligence to make a public sale, and sell all my personal property, except household goods and piano, that I may have on hand at the time of my death, on such terms and such security as my said executor shall determine.

*"Fourth*—I hereby direct my said executor to sell all real estate of which I may die seized, within three years, after my death and convert the same into money, and that in the meantime, if necessary, he proceed to rent the farm in accordance with his best judgment. * * *

*"Seventh*—I hereby devise and bequeath the one-seventh part of my estate to my wife, Lulu Spencer, to be her sole property, and to be in lieu of dower, homestead and widow's award and in full of all other claims against my said estate, and that my said executor pay over to her the said one-seventh of my said estate, real and personal, in cash, as soon as the same can be done, out of the proceeds of the estate and applicable to such payment, taking her receipts for same.

*"Eighth*—I devise and bequeath one-seventh of my net proceeds of my estate to my daughter Eva D. Spencer, to be paid to her at such time or times as shall be convenient for him in the administration of my said estate.

*"Ninth*—I hereby nominate and appoint my said executor and trustee, and as trustee for my said minor children, Malden and Lytle Spencer, and my grand-daughter, Cleo Hougham, to take and hold for the said Malden Spencer one-seventh of the net proceeds of my estate and for my son Lytle one-seventh of the net proceeds of my estate, * * * and that as they shall arrive at lawful age

to pay them their respective shares. It being the true intent and meaning of this provision of my will that the said trustee is to hold the shares of the minor children until they shall arrive at lawful age, and in the meantime to use the income, or so much thereof as may be necessary, for the education and care for this purpose. I nominate him guardian for said minor children.

"*Tenth*—I hereby order and direct that my said executor and trustee keep one-seventh of the net proceeds of my said estate in trust and that he loan the same to the best advantage, and that he pay the net income thereof to my son William Spencer on the first day of March in each and every year, to be paid to him in cash in his own hand and not upon any written or verbal order nor upon any assignment or transfer by William Spencer, and that at the death of the said William Spencer he pay the same to the heirs of his body, share and share alike, or their lawful guardians, if minors, and in the case of the death of the said William Spencer without leaving living issue of his body, the said sum of one-seventh part shall revert to my estate, and to be held and distributed amongst my children under the provisions of this will and in accordance with the provisions made for the payment under this will.

"*Eleventh*—I hereby order and direct that my said executor and trustee shall hold one-seventh of the net proceeds of said estate for the use and benefit of my daughter Georgia Gilmore, and that he loan the same to the best advantage possible, and that he pay over to her on the first day of March in each and every year the net income of the said one-seventh, the same to be paid to her in cash into her own hands in person and not upon any written or verbal order nor any assignment or transfer, and on her death the same to be paid to the heirs of her body, share and share alike, or if minors, to their lawful guardians, it being the true intent and meaning of this provision that the net income of one-seventh of the net proceeds of my estate

is to be paid to my said daughter Georgia Gilmore on the first day of March, annually.

"*Twelfth*—I further order and direct that in case any of my said children die without issue that the provisions made in this will for such children shall revert to my estate, to be distributed in accordance with the provisions of this will.

"*Thirteenth*—It is the true intent of this will that none of the proceeds of my estate herein provided for my said children shall go to or be possessed or enjoyed by any person or persons not related to me by blood.

"*Fourteenth*—I hereby authorize and empower my executor, for the time being, of this my will, to sell the whole or any part of the personal property at public or private sale and my real estate at private sale, and to execute and deliver all deeds, instruments and transfers and other writings to vest proper title thereto.

"*Fifteenth*—I further order and direct that my said executor and trustee until said land shall be sold under the provisions of this will he shall keep the said land well rented, to make reasonable repairs on the same and to pay promptly all taxes and assessments thereon, to keep the buildings well insured against fire, and to hold the rents and incomes thereof, and the same to form a part of the principal sum of my said estate to be distributed under the provisions of this will."

The other clauses of the will have no bearing on the questions requiring our consideration.

By the first codicil the testator stated that a son, Wendell P. Spencer, had been born to him, which caused him to change the will, and instead of the one-seventh interest given to his wife, children and grandchild, the will should read one-eighth to each of them, and the other one-eighth "of my estate I give, devise and bequeath to Wendell P. Spencer, to be paid for his use in the manner as provided in the ninth clause of my will" for the children and grand-

daughter. "In other respects my will to remain unchanged, it being the purpose of this codicil to place my son Wendell P. Spencer upon an equal footing, with reference to the distribution of my estate, with my wife and other children and grandchild."

The second codicil stated that a daughter, Ila May Spencer, had been born to him and he desired his property divided into ninths, said Ila May to receive one-ninth and the other shares to be reduced ·to ninths and distributed as theretofore provided. The second codicil contained the same provision, in substance, as that last above quoted as to the share that said Ila May should receive.

The third and last codicil provided, in a general way, that any child or children born thereafter should be treated the same and have the same share as the other children theretofore referred to and his wife, stating, among other things, that "if any other child or children be born to me, it is my will that each of the clauses in my said will as modified by said first and second codicil shall read one-tenth or one-eleventh, and so on, according as to whether one child or more than one child shall be born to me." The codicil further provided that "the eleventh item or paragraph of my said will relating to my daughter Georgia Gilmore is not to my liking and I hereby change the same. It is my will that the said share of my estate which my said will directs shall be held for the use and benefit of my said daughter Georgia Gilmore by the executor and trustee, as provided in said will, shall not be so held by said executor and trustee, but that my said daughter Georgia Gilmore shall be paid her share of my said estate, real and personal, in cash by said executor as soon as the same can be done, out of the proceeds of the estate applicable to such payment."

On the hearing it was shown that William R. Hougham, who was designated as executor and trustee in the will, died prior to the testator's death, and that the county

court appointed Lulu Spencer, the testator's widow, as administratrix with the will annexed. It appears that two other children were born to the testator after the drawing of the last codicil,—Richard Elmo and Miles Brown,—so that according to the terms of the will the estate was to be divided into eleven equal parts, one-eleventh to the widow and the other ten-elevenths to the children and grandchild, as in the will provided. The decree found that each of the children except William M., and also the grandchild, Cleo Hougham Bane, took an absolute estate in the shares coming to them, to be paid to the minors on their becoming of age, being held in trust in the meantime, and to the other children except William M., and to Cleo H. Bane, as soon as the same could be conveniently done in due course of administration of said estate; that the income from the principal sum belonging to said William M. be paid to him on the first day of March of each and every year; that upon the death of said William M. the principal of said share should be paid to the heirs of his body, share and share alike, or to the lawful guardian, if minors, and in case of his death without leaving living issue of his body, said principal sum to revert to the estate of the testator, to be distributed among his children in accordance with the provisions of said will. The decree further provided that the trustee, within three years from June 25, 1913, or as soon as he could consistently with the best interests of the estate, should sell the real estate and make proper conveyance of the same.

The widow, Lulu Spencer, was the only defendant in the trial below and is the only defendant in error here. All the plaintiffs were joined as plaintiffs in error in this court, and some of said plaintiffs in error so joined were, on motion in this court, severed as such plaintiffs in error and entered their appearance. Only one brief has been filed, and that, apparently, in favor of William M. Spencer. The minors, by their guardian *ad litem,* submit their rights

and interests to this court without argument. The brief herein filed contends that the construction of the will as to the share of William M. Spencer is not correct; that the will and codicils, as a whole, showed that the testator intended that the share of each of the legatees be on condition that they die leaving surviving children or heirs of their bodies and that the property should remain in members of the family; that the trial court by its decree in effect held the general provisions in the will illegal and ineffective; and the trust as to William M. Spencer's share should also be held ineffective because by the decree, it is argued, the entire scheme of the will had been defeated, the valid and invalid parts being so interwoven that the whole trust must fall.

The chief argument in plaintiffs in error's brief to sustain their contention is based upon the construction of the twelfth and thirteenth clauses of the will. Counsel insist that under these sections the testator clearly intended to affix to each of the legacies an estate tail. In construing a will the chief purpose of the courts is to ascertain the intention of the testator and to give to the will the interpretation and meaning which the testator intended, so that such intention may be carried out, whenever it can be done without violating some established rule of law or public policy. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Crerar* v. *Williams,* 145 id. 625; *Wardner* v. *Baptist Memorial Board,* 232 id. 606; *Armstrong* v. *Barber,* 239 id. 389; *Dean* v. *Northern Trust Co.* 266 id. 205.) The clauses of the will and codicils by which the testator devised and bequeathed the proceeds of the property to the legatees (except the tenth and eleventh) clearly show that the testator intended to have the shares (except that of William M.) paid over by the executor and trustee to those who were of age at the time of his death as soon as convenient in the proper administration of the estate, and to those who were minors as soon as they, respectively, became of age. To find the

true intention of the testator the will and codicils and all of their parts must be construed together. Did the testator by clauses 12 and 13 intend to modify the provisions of the will that the legacies should be paid to the various adult legatees (except William M.) as soon after his death as the best interests of the estate would permit and to the minors as soon as they became of age? Obviously, the testator did not intend that none of the proceeds of his property should ever be held by strangers to the blood. Fairly construing these clauses with the rest of the·will and codicils, it seems evident that what he intended was that the proceeds, at the time they were distributed after his death, should not go direct to strangers; that no person not related to the testator by blood could take under the will. Does such a construction of the will violate any established rule of law or public policy? We think not.

The twelfth clause provides that in case "any of my said children die without issue," then the legacies so left to such children shall revert to the estate, to be distributed among the other legatees. Does the phrase "die without issue" mean die during the lifetime of the testator, or before the time of distribution by the trustee under the will, or at any time? The primary and usual meaning of this phrase is, "if the first taker die without issue, either before or after the testator's death." The general rule is, that in the absence of anything in the context requiring a different construction, words referring to the death of the legatee without issue are to be taken as referring to the death either before or after the death of the testator. (*Fifer* v. *Allen,* 228 Ill. 507; *Crocker* v. *VanVlissingen,* 230 id. 225.) The context of the instrument, however, may be such as to show clearly that the testator intended, if the first taker die without issue, that the phrase may mean, if the first taker die in the lifetime of the testator without issue, then the second taker shall stand in his place to prevent a lapse. (*Duryea* v. *Duryea,* 85 Ill. 41; *Chapin* v.

*Crow,* 147 id. 219; *Fishback* v. *Joesting,* 183 id. 463; *Kohtz* v. *Eldred,* 208 id. 60.) ·"All rules of construction yield to the intention of the testator, plainly expressed." *Fifer* v. *Allen, supra;* see, also, *Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *Smith* v. *Smith,* 25 L. R. A. (N. S.) 1045, and cases cited in the note; 5 Gray's Cases on Property, 195.

While there seems to have been no case in this State where the fund was vested in a trustee, to be distributed at a certain time, presenting the questions here involved, such cases have arisen in other jurisdictions, and the rule has been laid down that if the fund is vested in a trustee who is directed to distribute it at a certain time, so that the trusts then determine, and the legatees who are to take ·upon the death of prior legatees without issue are contemplated as taking through the medium of the same trustee, the rule then is to restrict the meaning of "death without issue" to death without issue before the time of distribution. (Theobald on Wills,—6th ed.—636; *Beckton* v. *Barton,* 27 Beav. 99; *Wheable* v. *Withers,* 16 Simon's Ch. 505; *Dean* v. *Handley,* 2 H. & M. 635; *Lewin* v. *Killey,* 13 L. R. App. Cas. 783; *In re Luddy,* 25 L. R. Ch. 394.) The principles of construction raised in this case on this point were involved in *Lachenmyer* v. *Gehlbach, supra,* and a rule there laid down in accord with that found in the authorities last cited.

A fair construction of the will and codicils, in our judgment, leads to the conclusion that the testator intended that the phrase "die without issue," in the twelfth clause of the will, should mean die without issue at any time before the respective shares were or might properly be distributed to each of the legatees except William M. Manifestly, he intended the executor and trustee should pay over to each of the adult legatees, except William M., their legacies as soon after his death as conveniently could be done for the best interests of the estate and to the respective minor legatees as soon as they became of age, and

this regardless of whether said legatees had children or not, for when the proceeds are paid over to such legatees, without question each of them can dispose of such funds so paid to him or her in any manner that he or she sees fit. This construction is given support by the wording of the eleventh clause of said will with reference to the share of the daughter Georgia Gilmore, as modified by the last codicil, which clearly showed that the testator intended that the said daughter's share should be paid over to her as soon as could be done after the testator's death, regardless of the question of issue.

The construction above set forth should be given this instrument as to each of the legacies except the one in favor of the son William M. Spencer. By the tenth clause, considered alone, the testator clearly intended to leave only the net income of the legacy to William M. during his lifetime, without any power on his part to assign or transfer said income prior to the time he received it; that at his death the share should be paid to the heirs of his body, share and share alike, or to their lawful guardians, if minors, and in case of his death without leaving living issue of his body such share should revert to the estate, to be distributed according to the provisions of the will, and that this should be the case whether said William M. died before or after the death of the testator. Did the testator intend by the other provisions of the will and codicil to modify this manifest meaning of said tenth clause? Considering the plan and purpose of this will, reading it and all the codicils together, we are of the opinion that he did not in any way intend to modify these provisions of said tenth clause as to his son William M. The provisions in the codicils that he intended to place after-born children "upon an equal footing, with reference to the distribution of my estate, with my wife and other children and grandchild," in our judgment refer only to the amount that each of the after-born children should receive, and were not in-

tended to modify in any way the provisions of said clause as to William M.'s legacy. Such construction is in accord with the testator's intention and the complete scheme by which the legacies of the children and grandchild should be paid over to them, and none of the clauses of the will are rejected or held invalid. This being so, the authorities relied upon by counsel for plaintiffs in error, such as *Barrett* v. *Barrett,* 255 Ill. 332, need not be considered.

The decree was wrong in holding that the interest of each of the minor children vested at the testator's death. The decree should have found that the interest of each of the adult children (except William M.) vested at the testator's death, but that the interests of the minors would not vest until they, respectively, became of age. The decree correctly found as to the interest of said William M. As to the minor legatees, if either of them dies before reaching the age of majority and without issue, then his or her share shall be divided, in accordance with the terms of the will, among the other legatees. The decree correctly found that it was the duty of the trustee to receive from the administrator certain of the personal property, to sell the real estate within three years from June 25, 1913, make proper conveyance of the same and rent the real estate in the meantime. The decree should further find that the proper share of the proceeds should be distributed to the adults (except William M.) as soon as conveniently can be done; that the adults (except William M.) each took a vested interest in their respective shares at the death of the testator, and that the funds which will ultimately go to the minors if they live until they become of lawful age of majority shall be invested on proper security, and held by the trustee until distributed in accordance with the terms of the will as here construed. The deed or deeds made by the trustee to the purchaser or purchasers at the sale held under said decree will operate to pass good title to the grantee or grantees therein, to the extent that the

testator had title at his death, free from the claims of all persons claiming under said will or as heirs-at-law of the testator, and the decree may so provide, and also provide for any other matters considered proper to protect the rights and interests of the parties under the will as construed in this opinion.

The decree of the circuit court will be reversed and the cause remanded, with instructions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*