(No. 13418.—Reversed and remanded.)
WILLIAM H. WHITTINGTON *et al.* Appellees, *vs.* ILLINOIS
W. HUNT *et al.* Appellants.

*Opinion filed December 21, 1920—Rehearing denied Feb. 2, 1921.*

1. WILLS—*construction of will depends upon intention of testator and circumstances of the case.* Each will must be construed in the light of its own phraseology and the facts surrounding the testator at the time of its execution, and the object to be attained in the construction of a will is to ascertain the meaning which the testator intended and to give effect to that intention if it is not prohibited by law or public policy.

2. SAME—*general rule as to construction of devise over in case of death.* As a general rule, in construing a devise over in case of the death of a devisee, if there are no contingent circumstances connected with such death, the testator will be presumed to intend a death preceding his own, but if the devise over is to take effect in case of the death of the first taker under circumstances which may or may not take place, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker under the circumstances specified, either before or after the death of the testator.

3. SAME—*the law favors vesting of estates.* If possible, courts will adopt that construction of a will that will give an estate of inheritance to the first devisee, and estates, legal or equitable, given by will will always be regarded as vesting immediately unless the testator has by very clear words manifested an intention that they shall be contingent on a future event.

4. SAME—*when "death without issue" means death before time of distribution.* If a fund to be distributed under a will is vested in a trustee or in an executor as trustee, who is directed to distribute it at a certain time so that the trusts then determine, and the legatees who are to take upon the death of prior legatees without issue are contemplated as taking through the medium of the same trustee, then the words "death without issue" mean death before the time of distribution.

5. SAME—*when executor is a trustee.* Where an executor is ordered by the will to sell and distribute property he becomes a trustee for that purpose.

6. SAME—*when death "without children living" means before distribution.* Where, after executing a will providing for his wife during her lifetime and devising one-third of his property to each of his two sons and dividing the remaining one-third among his

four daughters, the testator, after his wife's death and the convey-
ance by him to his two sons of the shares described in the will,
executes a codicil giving each son five dollars and directing his ex-
ecutors to sell his remaining real estate and divide the proceeds
equally among his four daughters, a provision in the original will
for a devise over "if any of the above named children shall die
without children living" will be construed to refer to death before
distribution is made.

APPEAL from the Circuit Court of Shelby county; the
Hon. THOMAS M. JETT, Judge, presiding. .

JOHN H. WEBB, and WALTER F. BOYE, for appellants.

TRUMAN E. AMES, and GEO. B. RHOADS, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

December 12, 1908, Joseph C. Whittington executed his
will, by which he made temporary provision for the care
of his wife during her lifetime and then divided his prop-
erty into three parts, giving a part to each of his two sons
and dividing the third part among his four daughters. By
the eighth clause of his will he provided: "It is my will
that if any of the above named children shall die without
children living, then their share or part shall go to the
other living children, share and share alike." At the time
of making this will his family consisted of his wife, Joanna
Whittington, his sons, Heston Whittington and Frank Whit-
tington, and his daughters, Harriet Whittington Stokes,
Noia Whittington Hunt, Ella Whittington Bolt and Ida C.
Whittington. All his children had children living excepting
his daughters Harriet and Ida. His property consisted of
about 1000 acres of valuable farm lands in Shelby county,
Illinois, and money, notes and mortgages aggregating in
value over $100,000. May 16, 1913, testator made and
attached a codicil to his will. In the meantime his wife
had died, and April 12, 1912, he had conveyed to his two
sons, by warranty deeds, the fee simple title to the lands

described and devised to them in his will. It was to meet this changed condition in his family and worldly affairs that the codicil was executed. By the codicil he revoked practically all of the original will excepting clause 8. He then gave to each of his sons the sum of five dollars, and then provided in the second clause: "It is my will that all my real estate of every kind and character of which I die seized and possessed be sold by my executors, either at public or private sale, after my decease, and the proceeds thereof, together with the money derived from all my personal property, shall be equally divided between my daughters, Ida Whittington, Harriet Whittington Stokes, Noia Whittington Hunt and Ella Whittington Bolt, giving to each a one-fourth interest of my entire estate after the payment of all just debts, legacies, expenses and costs of administration in carrying out the directions and terms of this my last will and codicil attached." By the fourth clause of his codicil he authorized and empowered his executors to make sale of all his real estate within one year from the date of his decease and make and execute proper deeds of conveyance to the purchasers without an order of court. February 27, 1915, Joseph C. Whittington died, leaving these instruments as his last will and codicil. The instruments were duly probated and the estate was settled in accordance with the terms of the instruments, except that the daughters on December 30, 1915, entered into a written agreement "to take the land of which J. C. Whittington, deceased, died possessed in place of the proceeds of said land, as provided by said will." All the sons and daughters above named survived the testator and all had children living excepting the daughters Harriet and Ida. Upon the execution of the agreement above mentioned the executors conveyed to the daughters by warranty deed all real estate left by the testator. Ida C. Whittington received as her share and portion of the estate $6751.78 in cash and notes and an undivided one-fourth interest in the real estate. The estate was

closed and the executors discharged May 22, 1916. Ida C. Whittington remained single all her life and died September 8, 1917, leaving no child or descendant of such child but leaving her two brothers and three sisters as her only heirs-at-law. By her will she gave one dollar to each of her two brothers and all the rest of her estate to her three sisters. The two brothers filed their bill in the circuit court of Shelby county asking for a construction of the will of Joseph C. Whittington and declaring that as Ida C. Whittington died without leaving children living, there was created by the eighth clause of the will an executory devise or bequest in favor of the surviving brothers and sisters. The decree of the circuit court was in favor of the complainants, appellees here, the court declaring that by virtue. of the eighth clause of the will of Joseph C. Whittington and the death of Ida C. Whittington without children living, the undivided one-fourth interest of Ida C. Whittington in the real estate received by the daughters from their father's estate became and was the property in fee simple, share and share alike, of the two brothers and three sisters and was not a part of the estate of Ida C. Whittington, and that whatever remained of the moneys and notes coming to her as her distributive share in her father's estate became and was the property of the living children of Joseph C. Whittington and did not pass under her will. Appellants prayed and perfected an appeal from this decree and seek to re-verse the decree, contending that Ida C. Whittington took absolute title to the property when distribution was made in accordance with her father's will.

We have found no case in this State directly in point, but there are many cases which will be helpful in reaching the correct conclusion. As we said in *Wallace* v. *Noland,* 246 Ill. 535, the language of different wills is so varied and the circumstances surrounding the testators are so different that decisions in will construction cases are of less value as guides or authority than is the case upon almost any other

subject of the law.  Aside from settled general rules and
principles, each will must be construed in the light of its
own peculiar phraseology and the facts and circumstances
surrounding the testator at the time of its execution.  When
the testator made his will, in 1908, he may have had in mind
the keeping of his property in the family, because he made
the eighth clause of his will apply to all of his property.
It appears from the disposition which he later made of his
property that he abandoned this plan, if he ever entertained
it.  When he conveyed the farms to his two sons, which
were practically all the real estate he owned, he gave them
absolute title to the property, with no restrictions or limi-
tations.   There is no assurance that these sons will die
leaving children living, and so it cannot be that the testa-
tor, at the time he made his codicil, had in mind that his
property should go only to persons of his blood.  It seems
more reasonable to conclude from the language of the codi-
cil that he had given to his sons by deed all the property
he ever expected them to receive, and he executed the codi-
cil for the purpose of giving the rest of his property to his
four daughters.  It is hard to believe that he intended to
give to each of his sons an absolute estate in one-third of
his property and to give to each of his daughters a limited
or conditional estate in one-twelfth of his property.   The
language used in the second clause of the codicil is positive
and certain.  He gives to his four daughters, to be divided
share and share alike among them, his entire estate after
the payment of legacies and expenses.  If he intended to
give to them his entire estate he did not intend that this
estate should be cut down at the time of the death of one
of them without surviving children.  If that was his in-
tention he did not convey to them his entire estate, but con-
veyed to them an estate subject to being defeated by the
happening of a certain contingency.

How, then, shall section 8 of the will of Joseph C. Whit-
tington be construed?  The general rule applicable, as estab-

lished by the decisions of this court, is, that where there is a devise *simpliciter* to one person and in case of his death to another, there being no contingent or doubtful circumstances connected with such death, the testator will be presumed to intend a death preceding his own; but if the devise over is to take effect in case of the death of the first taker under circumstances which may or may not take place, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker under the circumstances specified, either before or after the death of the testator. (*Smith* v. *Kimbell,* 153 Ill. 368; *Fifer* v. *Allen,* 228 id. 507; *Lachenmyer* v. *Gehlbach,* 266 id. 11; *Sheley* v. *Sheley,* 272 id. 95.) In applying this rule, however, courts keep in mind that cardinal rule of will construction: The intent of the testator, when ascertained, must govern. The purpose of courts in construing a will is to ascertain the intention of the testator, so that such intention may be given effect if not prohibited by law. The object to be attained is to give the will the interpretation and meaning which the testator intended, and his intention will be carried out whenever it can be done without violating some established rule of law or public policy. To ascertain this intention of the testator the entire will will be considered and the different parts compared in view of the circumstances existing when it was made. (*Fifer* v. *Allen, supra; Spencer* v. *Spencer,* 268 Ill. 332; *Ashby* v. *McKinlock,* 271 id. 254.) It has also become the settled policy of the courts to adopt that construction of a will that will give an estate of inheritance to the first devisee unless other limiting or qualifying clauses in the will disclose, clearly and unequivocally, that it was the intention of the testator to limit or qualify the estate granted. (*Kohtz* v. *Eldred,* 208 Ill. 60.) It is also the settled rule of this court that estates, legal or equitable, given by will should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should

be contingent on a future event. (*Williamson* v. *Carnes*, 284 Ill. 521.) The law favors the vesting of estates, and in cases where the instrument is susceptible of two constructions the law is inclined to favor the construction most favorable to the devisee rather than the construction that would be against his interests. *Sheridan* v. *Blume*, 290 Ill. 508.

By his codicil Joseph C. Whittington authorized and empowered his executors to sell his real estate and personal property and to distribute the proceeds equally among his daughters. There was no limitation or condition attached to these funds after they were distributed to the daughters. When the proceeds were paid over to them there was nothing to prevent them from disposing of the funds so paid to them in any manner they saw fit. In view of all the circumstances surrounding the testator at the time he made and attached the codicil to his will, and in view of positive declarations which he makes regarding the distribution of proceeds of his estate among his daughters, we think the testator clearly intended clause 8 to mean that if either of his daughters died before the property was distributed and left no children surviving her, then the share that would have been distributed to that daughter should be distributed among his children, this provision being added in order to prevent a lapse.

The rule has been laid down that if the fund to be distributed is vested in a trustee, who is directed to distribute it at a certain time so that the trusts then determine, and the legatees who are to take upon the death of prior legatees without issue are contemplated as taking through the medium of the same trustee, then the meaning of "death without issue" is restricted to death without issue before the time of distribution. (*Spencer* v. *Spencer, supra; Bentz* v. *Maryland Bible Society*, 86 Md. 102, 37 Atl. 708; 40 Cyc. 1504.) Where the executor is ordered to sell and distribute property he becomes a trustee. (*Ebey* v. *Adams*, 135 Ill. 80; *Lash* v. *Lash*, 209 id. 595.; *Olcott* v. *Tope*,

213 id. 124.)` Therefore the same rule would apply where the distribution is to be made. by the executor. We hold that the condition of the eighth clause applied until distribution was made by the executors, and that when the property was distributed in accordance with the directions of clause 2 of the codicil it became the absolute property of the four daughters. (*Andrews* v. *Sargent's Estate,* 71 Vt. 257, 44 Atl. 341; *Snyder* v. *Taylor,* (N. J. Eq.) 103 Atl. 396.) It follows that the property received by Ida C. Whittington from the estate of her father was her absolute property after distribution and that it passed under her will.

The decree of the circuit court is therefore reversed and the cause is remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*